# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

PAUL GEORGE PETERSON,

          Plaintiff,

vs.

MARK PROSSER, CHIEF OF POLICE OF
STORM LAKE, IOWA, INDIVIDUALLY
AND ON BEHALF OF THE CITY OF
STORM LAKE, IOWA, AN IOWA
MUNICIPAL CORPORATION; *et al.*,

          Defendants.

No. C08-4005-MWB

**INITIAL REVIEW ORDER**

———————————

      This matter is before the court for initial review of an Amended Complaint submitted by the plaintiff Paul George Peterson on March 14, 2008, and docketed March 17, 2008 (Doc. No. 13). The court must review the Amended Complaint to determine whether Peterson's claims are "frivolous or malicious," "fail[] to state a claim on which relief may be granted," or "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). For purposes of this review, the court must determine whether Peterson's claims are "'based on an indisputably meritless legal theory,'" or on "'factual contentions [that] are clearly baseless.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 11832-33, 104 L. Ed. 2d 338 (1989)). Although *pro se* complaints are to be construed liberally, *see Burke v. North Dakota Department of Corrections and Rehabilitation*, 294 F.3d 1043, 1043-44 (8th Cir. 2002), Peterson must plead "enough facts to state a claim to relief that is plausible on its face" -- enough to "nudge[] [his] claims across the line from conceivable to plausible." Otherwise, the claims must be dismissed. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

Peterson filed his original Complaint on January 23, 2008. (Doc. No. 5) On January 23, 2008, the court issued a Pre-Initial Review Order directing Peterson to amend his Complaint to comply with Rule 8, Federal Rules of Civil Procedure. (Doc. No. 4) Peterson filed his Amended Complaint on March 17, 2008. (Doc. No. 13) In his Amended Complaint, Peterson has deleted several defendants who were named in his original Complaint. He nevertheless continues to name several defendants who either are immune from monetary damages, or against whom his claims are frivolous or fail to state a claim on which relief may be granted. He also intermixes frivolous claims with potentially viable claims as to the defendants who are properly named in the suit. In addition, Peterson combines, into a single case, claims arising from several different sets of circumstances. The following facts, set forth by Peterson in his Amended Complaint, are taken as true for purposes of the court's initial review. Notably, the factual summaries in this order as to the various defendants do not state each and every contention Peterson asserts in his Amended Complaint, but rather set forth the general nature of his claims for purposes of this initial review.

The first set of defendants and claims relates to events that occurred on and after January 21, 2006. On that date, at about 7:00 p.m., Peterson was driving northbound on Erie Street in Storm Lake, Iowa, when he saw officers questioning a man on the west side of the street. The temperature outdoors was quite cold, and the man being questioned, later identified as Ricardo Perez, was wearing a short-sleeved shirt and short pants, and was standing outside a police car. Peterson observed that Perez was "waving his hands, cupping his hands in fists, clutching the bottom of his short pants, all to conserve warmth, because of the frigid temperatures, which were reported to be about 19 degrees, that night." (Doc. No. 13, p. 10, ¶ 29) Peterson believed Perez's civil rights were being violated. He parked his truck on the east side of the road and walked across the street towards the police car, intending to request that the officers allow Perez to put on a coat.

However, as Peterson approached the squad car, he saw that an individual sitting inside was not a police officer, as he originally had believed. He therefore turned around and walked back to his truck.

Before Peterson got back into his truck, Storm Lake Police Officer Ray Eickholt "ran all the way across the street from the arrest scene, diagonally, about 50 feet from the arrest suspect, . . . and approached [Peterson] at the door to his vehicle." (Doc. No. 13, p. 3, ¶ 2) Peterson said, "I think it is inhumane you won't let that boy put on a coat." According to Peterson, Officer Eickholt responded, "Get back in your truck," but then immediately, before Peterson could make any move to get into his truck, the officer grabbed him "and dragged him across the street, slammed his body onto the squad car, handcuffed him and then paraded him back in front of the video camera[.]" (*Id.*) Officer Speers also was at the scene, as well as a student intern who was inside the squad car, and they witnessed what took place at the scene.

The officers arrested Peterson on a charge of interference with official acts, and took him to the Buena Vista County Sheriff's office for questioning and processing. Before they left the scene of Perez's questioning, Peterson's sister Jan Alderton came upon the scene and asked the officers if she could drive Peterson's truck away to prevent it from being towed. The officers allowed Alderton to remove the vehicle from the scene. According to Peterson, Alderton stood next to the squad car for a sufficient amount of time to tell that no radio was playing in the squad car. (This fact will become significant later in the narrative.)

At the Sheriff's office, the officers found some medication on Peterson's person that Peterson identified as "a prescription bottle of 'amphetamine salts.'" (*Id.*, p. 5, ¶ 8) Peterson convinced the officers the medication had been prescribed for him by a doctor to treat "Attention Deficit Disorder." Peterson deems this as notice to the officers that he suffers from a "'disability' recognized under the 'ADA' (42 USC 12101 et seq.)." (*Id.*)

Peterson claims Eickholt and Speers conspired together to file a false police report regarding the incident, in which they alleged Peterson had approached them and then had failed to comply with their repeated requests that he leave the scene. Among other things, he claims Eickholt was the only officer who grabbed him, yet the police reports indicate Eickholt and Speers each took one of his arms and walked him over to the police car. Peterson claims the police reports were falsified in this manner because Eickholt had prior incident reports indicating the officer had "an anger management or impulsivity problem," and Speers falsified the report to protect Eickholt from disciplinary proceedings or reprimand.

Peterson claims Officer Todd Erskine knew the police reports contained false information, but he nevertheless wrote up and issued a press release based on the false police reports filed by Eickholt and Speers. As a result of the press release prepared by Erskine, the local radio station reported the facts of the incident as set forth in the police reports, which Peterson claims defamed him and caused him to suffer emotional distress.

Peterson also claims Eickholt altered the audio/video recording of the incident that was made on the squad car's taping system. Specifically, he claims Eickholt destroyed the audio portion of the tape and covered it over "with a radio talk show soundtrack, . . . even though there was no radio playing in the squad car, that night." (*Id.*, p. 6, ¶ 12) He further claims that although Speers was "not directly involved in that evidence tampering," he nevertheless knew it took place and knew it was a criminal act. (*Id.*, p. 12, ¶ 39)

Peterson further claims the officers perjured themselves at his trial on the charge of interference with official acts. He claims Buena Vista County Attorney Phil Havens interviewed Eickholt and Speers prior to the trial, told them what questions would be asked, and participated in the fabrication of their testimony.

As to Erskine, Peterson claims the officer prepared an affidavit containing falsehoods in support of proceedings to have Peterson involuntarily committed to a mental

health facility. Peterson claims Erskine did not know him and was not acquainted with him, yet Erskine swore in the affidavit that he was "acquainted" with Peterson. He further claims Erskine "induced Chris Cole to join in the false affidavit[.]"

Additional claims against certain individual defendants are discussed further below.

**1.    "Ray Eickholt, Captain, Storm [Lake] Police Department"**

The court begins its review with Peterson's claims against Ray Eickholt, because Peterson's litany of claims set forth against this defendant are illustrative of the wide-ranging scope and types of claims Peterson has asserted in his Amended Complaint.

In the prayer for relief (Doc. No. 13, p. 9), Peterson asserts claims against Ray Eickholt for "false arrest, criminal assault, excessive search and seizure, malicious prosecution, false filing of police reports, criminal conspiracy to falsify public records, evidence tampering & destruction, conspiracy to induce another witness to testify falsely, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, perjury, under oath, 8/23/06 and criminal conspiracy to violate plaintiff's equal protection and due process rights." In addition, in the body of "Part I, Count I," Peterson asserts claims "under 18 USC 1512b, influencing each others' testimony, false reports, falsification of infromation [sic], triggering 18 USC 1961-68, 'RICO', et. seq."; "a 'Bivens' action, for excessive 'seizure', and 'IOCC' action, under Iowa Code 706.1 & 706A.2, under 'J', for false statements, and 'criminal assault', under 708.1, & 720.6 for 'malicious prosecution', etc."; "18 USC 1512b, 2B, altering and impairing integrity of evidence, by tampering [with] same, also under Iowa code 719.3(1), etc."; and "officers apparently corruptly persuaded each other to influence their testimony in an official proceeding, under 18 USC 1512b, 1), also 2)B. with altered evidence adduced, actionable under 'RICO', 18 USC 1961-68, also under Iowa 719.3 (obstruction of defense & prosecution, also under 720.2,

perjury, also under 'IOCC', 706A.2.'3', suppressing, concealing or altering evidence, to impede convicting a person, 'j', inducing each other, etc.)." He seeks joint and several damages against Eickholt in the amount of $6 million compensatory damages and $24 million punitive damages.

Construing Peterson's claims in the light most favorable to Peterson, he has asserted viable claims against Eickholt for false arrest, criminal assault, false filing of police reports, criminal conspiracy to falsify public records, evidence tampering and destruction, conspiracy to induce another to testify falsely (under state law), intentional infliction of emotional distress, defamation of character, civil rights violations under state and federal law, criminal conspiracy to violate Peterson's constitutional rights, and perjury.[1] These claims against Eickholt may proceed.

Peterson's *Bivens* action for "excessive search and seizure" fails to state a claim for which relief may be granted. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), "allows for a cause of action for damages against federal officials . . . for certain constitutional violations." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72, 122 S. Ct. 515, 522, 151 L. Ed. 2d 456 (2001)). The Eighth Circuit has explained that "'[a]n action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials[.]'" *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) (quoting *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (per curiam)). Thus, Peterson cannot bring a *Bivens* action against a state official. In addition, Peterson has failed to plead sufficient facts to support a claim for "excessive search and seizure"

---

[1]Notably, Peterson's claims premised on alleged criminal acts survive because Iowa Code section 611.21 specifically allows a civil cause of action for violation of a criminal statute. Iowa Code § 611.21; *Heick v. Bacon*, 561 N.W.2d 45, 53-54 (Iowa 1997) (citing *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423-24 (Iowa 1977)); *cf. Stepp v. State Farm Mut. Auto. Insur. Co.*, 2006 WL 2038596 at *4 (N.D. Iowa July 19, 2006) (acknowledging Iowa's interpretation of section 611.21).

under 42 U.S.C. § 1983. Peterson's claim against Eickholt for "excessive search and seizure" is dismissed.

Peterson attempts to state a claim against Eickholt for violating 18 U.S.C. § 1512(b), based on his allegation that Eickholt and Speers conspired to change their testimony and falsify their police reports. Section 1512 does not provide for a private right of action. *Gipson v. Callahan*, 18 F. Supp. 662, 668 (W.D. Tex. 1997). Accordingly, this claim is dismissed.

Peterson alleges Eickholt's and Speers's actions in "persuad[ing] each other to influence their testimony in an official proceeding" is an "action under 'RICO', 18 USC 1961-68." The U.S. Supreme Court has explained:

> The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits certain conduct involving a "pattern of racketeering activity," 18 U.S.C. § 1962, and makes a private right of action available to "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive restrictions, § 1964(c), provided that the alleged violation was the proximate cause of the injury, *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268m, 112 S. Ct. 1311, [1317-18,] 117 L. Ed. 2d 532 [(1992)].

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 451, 126 S. Ct. 1991, 1992, 164 L. Ed. 2d 720 (2006). Peterson has not made any allegation that Eickholt's and Speers's actions injured "his business or property." This claim is dismissed.

## 2. "Joey Speers, Former Police Officer, Storm Lake Police Department"

In the prayer for relief (Doc. No. 13, p. 12), Peterson asserts claims against Joe Speers for "false arrest, criminal assault, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records, evidence tampering and destruction, excessive search and seizure, perjury, intentional infliction of severe emotional

distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, perjury, under oath, 8/23/06 and criminal conspiracy to violate plaintiff's equal protection and due process rights[.]"  In addition, in the body of "Part I, Count II," Peterson asserts claims "under 'RICO', 18 USC 1961-68, also 42 USC 1985, 'conspiracy', also malicious prosecution, under 42 USC 1983, under color of state law, also Iowa 'IOCC', 706A.2. 'e' concealed, altered evidence, also 'h', induced another public servant, also 'j' false statements made, etc."  Peterson seeks joint and several damages against Speers in the amount of $6 million compensatory damages and $24 million punitive damages.

For the reasons discussed above in connection with Peterson's claims against Eickholt, his claims against Speers for "excessive search and seizure" and RICO violations are dismissed.  Peterson's remaining claims against Speers may proceed.

### 3.    Todd Erskine, Deputy Storm Lake Chief of Police

In the prayer for relief (Doc. No. 13, p. 21), Peterson asserts claims against Todd Erskine for "false arrest, criminal assault, excessive search and seizure, malicious prosecution, false filing of police reports, evidence tampering and destruction, criminal conspiracy[] to falsify public records, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, false affidavits[] under oath, false imprisonment, discrimination in employment, obstruction of justice, and criminal conspiracy to violate [his] equal protection and due process rights."  In addition, in the body of "Part I, Count III," Peterson claims Erskine "violated 18 USC 1512b,2"; "the 'Freedom of Information Act', 5 USC 522"; and "RICO."  Peterson seeks joint and several damages against Erskine in the amount of $6 million compensatory damages and $24 million punitive damages.

For the reasons discussed above in connection with Peterson's claims against Eickholt, his claims against Erskine for "excessive search and seizure" and RICO violations are dismissed. In addition, there is no private right of action under the Freedom of Information Act against state agencies or officials. *Stoianoff v. Comm's of Motor Vehicles*, 107 F. Supp. 2d 439, 444 (S.D.N.Y 2000) (citations omitted); *see Thompson v. Walbran*, 990 F.2d 403, 405 (8th Cir. 1993) (citing *Daniels v. St. Louis VA Regional Office*, 561 F. Supp. 250, 251 (E.D. Mo. 1983) for proposition that there is "no private right of action for money damages under FOIA"). Thus, Peterson's claim under the Freedom of Information Act also is dismissed.

Peterson has failed to state an employment discrimination claim against Erskine for which relief may be granted. Peterson alleges Erskine prepared paperwork to have him involuntarily committed to a mental institution, and Erskine intentionally hurried the process so Peterson could be arrested while he was present in city offices under the pretext of an employment interview. Peterson claims that as part of the commitment paperwork, Erskine lied about being "acquainted" with Peterson. He also claims Erskine has failed to give him copies of certain documentary and recorded evidence, and failed to conduct a full internal investigation of Peterson's allegations against Eickholt and Speers.

Nowhere in his allegations does Peterson ever claim Erskine had any authority to make hiring decisions for the City of Storm Lake, or provide other evidence of direct discrimination. For purposes of indirect discrimination, although Peterson alleges he is a member of a protected class (i.e., that he has a disability or handicap due to Attention Deficit Hyperactivity Disorder), he further fails to allege he was qualified for any position for which the City of Storm Lake was accepting applications, he was denied such a position, and the City instead hired someone from outside the protected class. Thus, Peterson has failed to include allegations constituting a prima facie case of "failure to hire" or other employment discrimination. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411

U .S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003), interpreting "the *McDonnell Douglas* burden-shifting analysis"). This claim also is dismissed.

Peterson's remaining claims against Erskine may proceed.


**4.      "Mark Prosser, Storm Lake Chief of Police"**

In the prayer for relief (Doc. No. 13, p. 24), Peterson asserts claims against Mark Prosser for "false arrest, criminal assault, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records, and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, false affidavits[] under oath, falsified press reports, and criminal conspiracy to violate plaintiff's equal protection and due process rights, and also for employment discrimination [] under the Americans with Disabilit[ies] Act, Title 7, Civil Rights Act of 1964 & or Age Discrimination in Employment Act[.]"   In addition, in the body of "Count I, Part IV," Peterson claims Prosser committed "a 'Bivens' violation, and excessive seizure." Peterson seeks joint and several damages against Prosser in the amount of $6 million compensatory damages and $24 million punitive damages.

For the reasons discussed above in connection with Peterson's claims against Eickholt, his claim against Prosser for "excessive search and seizure" is dismissed. His employment discrimination claim also is dismissed, for the reasons discussed above in connection with his claim against Erskine. His remaining claims against Prosser may proceed.

**5.     "Chris Cole, Storm Lake Police Officer"**

In the prayer for relief (Doc. No. 13, p. 27), Peterson asserts claims against Chris Cole for "false arrest, criminal assault, filing of false affidavits, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate plaintiff's equal protection and due process rights[.]"   Peterson seeks joint and several damages against Cole in the amount of $6 million compensatory damages and $24 million punitive damages.

Peterson alleges Cole executed a false affidavit in support of Peterson's involuntary commitment to a mental institution, and that Cole arrested him without cause.   (Doc. No. 13, pp. 25-27, "Part I, Count V")   Taking the facts in the light most favorable to Peterson, he has stated claims for false arrest, filing of false affidavits, malicious prosecution, intentional infliction of severe emotional distress, defamation of character, violation of civil rights, and criminal conspiracy to violate his constitutional rights.   These claims may proceed.   As to the remaining claims, Peterson has failed to allege sufficient facts to state a plausible claim for relief.   Therefore, the remaining claims (i.e., criminal assault, malicious prosecution, false filing of police reports, and retaliation for free speech) are dismissed.

**6.     "Patti Moore, Storm Lake City Administrator"**

Peterson alleges he asked Patti Moore to investigate his claim that he had been falsely arrested and maligned in the press, and he further asked Moore for a job interview for the position of "internal affairs investigator."   He alleges Moore, "by context and implication," knew Prosser was seeking to have Peterson committed, and she conspired with Prosser and Erskine to accomplish Peterson's false arrest and commitment.   He

alleges that at a later date, Moore observed Prosser grab Peterson's arms, and he alleges she "is criminally culpable for her complicity" in tampering with a surveillance videotape of the incident. He claims Moore knew about his age and his ADHD "disability," and she failed to take steps to ensure he was hired by the City of Storm Lake . He also claims she failed to take steps to preserve certain evidence and records relevant to his claims against the City. He claims Moore is culpable for failing to "cause" Prosser "to be prosecuted for his crime of criminal assault," which "is continuing her involvement in a criminal conspiracy, to avoid criminal liability under the 'Iowa Ongoing Criminal Conduct' (IOCC) laws, and . . . thereby [she is] implicated in a 'RICO' pattern[.]"

In the prayer for relief (Doc. No. 13, p. 32), Peterson asserts claims against Patti Moore for "false arrest, criminal assault, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, employment discrimination under ADA, Title I, Title 7 Civil Rights Act of 1964 & Age Discrimination in Employment Act, and criminal conspiracy to violate plaintiff's equal protection and due process rights[.]" In the body of "Part I, Count VI," he further asserts claims against Moore under RICO and a "'Bivens' action[] for false and unwarranted seizure," as well as "withholding evidence under 5 USC 552." Peterson seeks joint and several damages against Moore in the amount of $6 million compensatory damages and $24 million punitive damages. He also seeks injunctive relief, and "to restart employment discussions, for productive results, in the way of a job offer[.]"

Viewing the facts in a light most favorable to Peterson, he has stated claims against Moore that are at least marginally plausible for criminal conspiracy to falsify public records or conceal or withhold evidence, intentional infliction of emotional distress, and violation of Peterson's civil rights. He has failed to state a claim for relief against Moore

that is plausible on its face under any of the other legal theories asserted, and the remaining claims against Moore are dismissed.

### 7.    "Paul Havens, Storm Lake City Attorney"

Peterson claims Havens, "by direct virtue and implication of his position as city attorney," has a duty to monitor city employees' actions, and he "is involved as a co-conspirator, in the sordid and various criminal actions, communications, and violations, of each of the rights, that have implicated other City of Storm Lake employees," as set forth in the Amended Complaint.  He claims Havens "should be held accountable" for others' destruction and alteration of evidence.  He claims Havens has "retaliated" against him for exercising his free speech rights by "barring" and "banning" Peterson from the city attorney's office.  He also claims Havens has withheld certain documents Peterson has requested under the FOIA, and Havens is involved in a criminal conspiracy with Prosser and others to conceal evidence that Prosser assaulted Peterson.

In the prayer for relief (Doc. No. 13, p. 35), Peterson asserts claims against Havens for "false arrest, criminal assault, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate [his] equal protection and due process rights, and discrimination in employment[.]"  Peterson seeks joint and several damages against Havens in the amount of $6 million compensatory damages and $24 million punitive damages.

Even viewing the facts in a light most favorable to Peterson, he has failed to state a claim for relief against Paul Havens for which relief may be granted.  "Iowa law provides absolute immunity from suit for prosecutors engaging in their official functions," to allow prosecutors to "'vigorously proceed with their tasks unhampered by the fear of

unlimited civil litigation.'" *Schenecker v. City of Sioux City*, 107 F.3d 662, 664 (8th Cir. 1997) (quoting *Blanton v. Barrick*, 258 N.W.2d 306, 311 (Iowa 1977)). Peterson's claims against Paul Havens are dismissed.

### 8. "Storm Lake Public Library"

Peterson's claims against the library are totally unrelated to the other claims raised in the case. He alleges the library advertised a job opening for a library clerk, he applied for the job, and he was not hired. He alleges the library failed to hire him due to his age ("54 years old"), in violation of the Age Discrimination in Employment Act ("ADEA"), and due to his "disability" ("ADD/ADHD"), in violation of Title VII, Civil Rights Act of 1964 ("religious intolerance"). (Doc. No. 13, p. 35) Peterson states that despite the filing of this action against the library, all of the library's employees have been and remain "courteous, cordial, helpful, cheerful, and cooperative" towards him. He seeks damages against the library in the amount of $150,000, jointly and severally with the other defendants named in his Amended Complaint.

Peterson has failed to make allegations constituting a prima facie case of employment discrimination against the library, and this claim is dismissed.

### 9. "Phil Havens, Former Buena Vista County Attorney"

Peterson alleges Phil Havens took a number of different actions during his term as Buena Vista County Attorney that violated Peterson's rights in a variety of ways. He further claims Phil Havens had knowledge of illegal actions taken by others, the mere knowledge of which implicates Phil Havens in a criminal conspiracy to violate Peterson's rights. (*See* Doc. No. 13, pp. 36-41) He asserts claims against Phil Havens for "false arrest, criminal assault, malicious prosecution, false filing of police reports, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional

infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate [his] equal protection and due process rights[.]" (*Id.*, pp. 41-42) He seeks joint and several damages against Phil Havens in the amount of $6 million compensatory damages and $24 million punitive damages.

Even viewing the facts in a light most favorable to Peterson, he has failed to state a claim for relief against Phil Havens for which relief may be granted. *See Schenecker, supra*. Peterson's claims against Phil Havens are dismissed.

## 10. "Lori Kolpin, Previous Assistant BV County Attorney"

Peterson claims, among other things, that Lori Kolpin conspired with Dr. Charles Murphy, O.D., to cause the preparation of a report that falsely diagnosed Peterson with bipolar disorder, and she took actions to ensure Peterson would not be released "for a period in excess of 4 weeks after the 'commitment order', of 2/6/06," to prevent Peterson from appealing the order. He further claims Kolpin testified falsely at a hearing regarding his mental health status. He asserts claims against Kolpin for "false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, undisclosed professional referral relationship to Dr. Charles Murphy, O.D., . . . and criminal conspiracy to violate [Peterson's] equal protection and due process rights[.]" Peterson seeks joint and several damages against Kolpin in the amount of $6 million compensatory damages and $24 million punitive damages. (Doc. No. 13, pp. 42-47)

Even viewing the facts in a light most favorable to Peterson, he has failed to state a claim for relief against Lori Kolpin for which relief may be granted. *See Schenecker, supra*. Peterson's claims against Lori Kolpin are dismissed.

**11.    "Dave Patton, Current BV County Attorney"**

Peterson claims Patton has violated his right to equal protection under the law by refusing to investigate Peterson's allegation that Eickholt and Speers perjured themselves at his commitment hearing on August 23, 2006, and by failing to provide Peterson with a copy of the transcript of that hearing at no cost to him. He claims Patton conspired with others to conceal, tamper with, or withhold evidence. He alleges Patton's leadership participation in the Presbyterian Church and his loyalty to other church members has prevented Patton from acting on Peterson's allegations of wrongdoing by city and county officials who also belong to the same church. He claims Patton "extorted" money from Peterson and his mother because Patton refused to reimburse Peterson for the cost of a mental health evaluation, which Peterson alleges violates RICO and the Hobbs Act, 18 U.S.C. § 1951. (Doc. No. 13, pp. 47-50)

Peterson asserts claims against Patton "for false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate [Peterson's] equal protection and due process rights[.]" Peterson seeks joint and several damages against Patton in the amount of $6 million compensatory damages and $24 million punitive damages. (*Id.*, p. 50)

Even viewing the facts in a light most favorable to Peterson, he has failed to state a claim for relief against Dave Patton for which relief may be granted. *See Schenecker, supra*. Peterson's claims against Dave Patton are dismissed.

## 12.     "James McHugh, Current Assistant BV County Attorney"

Peterson alleges McHugh "wilfully" gave him "an erased audiotape" of his December 14, 2006, interrogation by Officer Lisa Kenney, conspiring with others to tamper with or destroy that audiotape and also a DVD videotape of an incident on January 17, 2007, when Prosser allegedly grabbed Peterson's arms "without justification" and falsely arrested him.   Peterson asserts claims against McHugh "for false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate [Peterson's] equal protection and due process rights[.]"   Peterson seeks joint and several damages against Patton in the amount of $6 million compensatory damages and $24 million punitive damages.   (Doc. No. 13, pp. 50-51)

Even viewing the facts in a light most favorable to Peterson, he has failed to state a claim for relief against James McHugh for which relief may be granted.   *See Schenecker, supra*.   Peterson's claims against James McHugh are dismissed.


## 13.     "Doctor Charles Murphy, O.D."

Peterson alleges Dr. Murphy "had an untoward and undisclosed prior professional relationship with former Assistant BVG County Attorney Lori Kolpin" that resulted in a "criminal conspiracy" with regard to Peterson's civil commitment proceedings. He claims Kolpin "spoon-fed" the doctor's testimony at Peterson's post-commitment hearing, and the doctor refused to look at certain previous test results Peterson tendered to him.   Peterson asserts claims against Dr. Murphy for "'medical malpractice', criminal conspiracy, collusion[] with co-defendant Lori Kolpin, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law,

retaliation for free speech, religious intolerance, and criminal conspiracy to violate plaintiff's equal protection and due process rights." Peterson seeks joint and several damages against Dr. Murphy in the amount of $6 million compensatory damages and $24 million punitive damages. (Doc. No. 13, pp. 61-63)

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state any federal claim for relief against Dr. Murphy that is plausible on its face, and the court declines to exercise jurisdiction over any state law claims Peterson may have against Dr. Murphy. *See* 28 U.S.C. § 1367(c)(3). Peterson's claims against Dr. Murphy are dismissed.

## 14. "Doctor Phillip Muller, O.D."

Peterson alleges that after he was released from civil commitment, he saw Dr. Muller for follow-up as ordered by the court, and Dr. Muller disregarded certain records provided to him by Peterson from some 1997 testing. He further alleges Dr. Muller "took a mere 'layman's', advocacy opinion" and violated his right to doctor-patient confidentiality when the doctor conferred with Assistant County Attorney Lori Kolpin regarding the case. He alleges Dr. Muller also failed to update his report to recommend Peterson receive a "court ordered second opinion" at the county's expense. Peterson asserts claims against Dr. Muller for "'medical malpractice', criminal conspiracy, collusion[] with co-defendant Lori Kolpin, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, and criminal conspiracy to violate plaintiff's equal protection and due process rights." Peterson seeks joint and several damages against Dr. Muller in the amount of $6 million compensatory damages and $24 million punitive damages. (Doc. No. 13, pp. 63-64)

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state any federal claim for relief against Dr. Muller that is plausible on its face,

and the court declines to exercise jurisdiction over any state law claims Peterson may have against Dr. Muller. *See* 28 U.S.C. § 1367(c)(3). Peterson's claims against Dr. Muller are dismissed.

### 15. "Buena Vista University, an Iowa Corporation"

Peterson claims Buena Vista University ("BVU") discriminated against him by failing to hire him for some unspecified job because, according to Peterson, a BVU Vice President stated Peterson is "a lightning rod for controversy." Peterson claims BVU's failure to hire him was based on his "disability" (i.e., ADHD), "religious intolerance," and the ADEA. Peterson appears to claim that "right to sue letters" he has received from the Equal Employment Opportunity Commission constitute some measure of proof that discrimination did, in fact, occur. He asserts claims against BVU for "false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, Americans with Disabilities Act (title 1), religious intolerance under title 7, Civil Rights Act of 1964, and/or Age Discrimination in Employment Act, (age 55 now) and criminal conspiracy to violate [his] equal protection and due process rights[.]" Peterson seeks joint and several damages against BVU in the amount of $6 million compensatory damages and $24 million punitive damages. (Doc. No. 13, pp. 60-61)

Peterson has failed to allege facts that would constitute either direct or indirect discrimination against him. He further has failed to allege he was qualified for any position for which BVU was accepting applications, he was denied such a position, and BVU instead hired someone from outside a protected class to fill the position. *See McDonnell Douglas Corp. v. Green*, 411 U .S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Kenney*

*v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003), interpreting "the *McDonnell Douglas* burden-shifting analysis").  Peterson's claims against BVU are dismissed.

**16.**  **"Mark Kirkholm, Director of Security, Buena Vista University"**

Peterson claims Kirkholm banned him from the BVU campus without just cause. Peterson thereafter attended a Unitarian church service on campus, and claims he went directly to and from the service without staying on the campus.  He then wrote letters to the editor of several newspapers and an editorial about the Unitarian service he had attended.  According to Peterson, he was arrested eleven days after the service for being on the BVU campus "without justification."  He claims his arrest occurred as a result of an affidavit prepared by the defendant Gary Armstrong, and Peterson claims the affidavit contained falsehoods and failed to note that Peterson had claimed a right to attend the church service under the first amendment to the Constitution.  In addition, he claims Kirkholm has refused to give him the names of persons who "bore 'false witness' against him, . . . violating his right to a 'full and fair trial[.]"  (Doc. No. 13, pp. 52-57)

Peterson asserts claim against Kirkholm for "false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate [his] equal protection and due process rights[.]"  Peterson seeks joint and several damages against Kirkholm in the amount of $6 million compensatory damages and $24 million punitive damages.  (*Id.*, pp. 57-58)

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state any federal claim for relief against Kirkholm that is plausible on its face. Peterson's claims against Kirkholm are dismissed.

**17.    "Gary Armstrong, an Iowa licensed attorney"**

Peterson claims Armstrong swore a false affidavit that resulted in his arrest for attending the Unitarian church service on the BVU campus.  He claims Armstrong took other actions evidencing "proof of bad faith, malice, [and] shifting pretext" on BVU's behalf, subjecting BVU to "punitive, treble, and damages per se, for retaliation for plaintiff's free speech, free religion []first amendment activities, and on an ongoing basis, with damages continuing[.]"  (Doc. No. 13, pp. 58-59; internal quotation marks omitted) He alleges Armstrong filed, in bad faith, a motion to quash a subpoena for the deposition of Mark Kirkholm, and attached a false certificate of mailing to the motion that certified a copy had been delivered to "all parties," yet neither Peterson nor his "standby attorney" received a copy.

Peterson asserts claims against Armstrong for "false arrest, criminal assault, malicious prosecution, criminal conspiracy[] to falsify public records[] and to conceal or withhold evidence, intentional infliction of severe emotional distress, defamation of character, violation of civil rights under color of state law, retaliation for free speech, and criminal conspiracy to violate plaintiff's equal protection and due process rights[.]"  (*Id.*, p. 59)  Peterson seeks joint and several damages against Armstrong in the amount of $6 million compensatory damages and $24 million punitive damages.

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state any federal claim for relief against Armstrong that is plausible on its face. Peterson's claims against Armstrong are dismissed.


**18.    "District Judge John Duffy, BV County, Iowa"**

Peterson alleges that because Gary Armstrong's affidavit included or implicated issues of freedom of religion, heresy, and first amendment rights, Armstrong's affidavit "should have been subject to a 'heightened scrutiny', by any judge that saw it[.]"  (Doc.

No. 13, pp. 64-65) He claims that because Judge Duffy failed to subject Armstrong's affidavit to such heightened scrutiny, the warrant the judge issued for Peterson's arrest for criminal trespass was unconstitutional and constituted "an illegal court action, which obviates the traditional 'immunity' for Judge John Duffy, from civil damages, based upon the assertion that this constitutes evidence in fact, of a 'criminal conspiracy', where Judge John Duffy was no longer acting in proper judicial form." (*Id.*, p. 65) Peterson seeks damages from Duffy for "false arrest, severe emotional distress, defamation of character, violation of civil rights under color of state law, and criminal conspiracy to violate [his] equal protection and due process rights[.]" (*Id.*) Peterson seeks joint and several damages against Duffy in the amount of $6 million compensatory damages and $24 million punitive damages. (Doc. No. 13, pp. 65-68)

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state a claim against Duffy on which relief may be granted. As the Iowa Supreme Court has long recognized:

> Few doctrines have been more settled than the absolute immunity of judges from damages for acts committed within their judicial jurisdiction. This immunity applies even when the judge is accused of acting maliciously and corruptly because as a matter of policy it is in the public best interest that judges should exercise their function without fear of consequences and with independence. *Pierson v. Ray*, 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 [(1967)]; *Bradley v. Fisher*, 13 Wall. 335, 20 L. Ed. 646 [(1871)].

*Blanton v. Barrick*, 258 N.W.2d 306, 308 (Iowa 1977). Peterson's claims against Duffy are dismissed.


19. **"Current Magistrate Pat Eich, BV County, Iowa"**

Peterson claims Magistrate Eich has made certain rulings that constitute a "bad faith and suspect withholding of evidence" in violation of Peterson's civil rights, and in

violation of RICO and 18 U.S.C. § 1512b.  (Doc. No. 13, pp. 65-68)  He asserts a claim against Eich "on account of any such proven conspiracy or collusion, involving withholding, concealment, tampering or destruction, of any evidence, which is found to have been conducted or assisted, by this defendant, amounting to equal protection and due process rights, variously[.]"  Peterson seeks joint and several damages against Eich in the amount of $6 million compensatory damages and $24 million punitive damages.

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state a claim against Eich for which relief may be granted.  *See Blanton, supra.*  Peterson's claims against Eich are dismissed.

**20.    "The Iowa Supreme Court"**

Peterson claims he has several motions pending currently before the Iowa Supreme Court for the purpose of obtaining evidence that has been withheld from him wrongfully by other defendants in this action.  He claims if the Iowa Supreme Court grants his motions and allows him to obtain the evidence, the court "will have thereby maintained their traditional 'immunity' to civil damages," but if the court denies his motions, then that will "be evidence of 'bad faith' and criminal withholding of such evidence," in violation of 18 U.S.C. § 1512b and RICO.  He asserts a claim against the Iowa Supreme Court "on account of any such proven conspiracy or collusion, involving withholding, concealment, tampering or destruction, of any evidence, which is found to have been conducted or assisted, by this defendant, amounting to equal protection and due process rights, variously[.]"  Peterson seeks joint and several damages against the Iowa Supreme Court in the amount of $6 million compensatory damages and $24 million punitive damages.

Even viewing the facts in the light most favorable to Peterson, the court finds he has failed to state a claim against the Iowa Supreme Court for which relief may be granted.

The justices of the Iowa Supreme Court are entitled to absolute judicial immunity.  *See Blanton, supra.*  Peterson's claims against the Iowa Supreme Court are dismissed.

### 21.  "Thomas Miller, Iowa Attorney General"

Peterson claims Iowa Code section 716.7(2)(B), defining "trespass," is "unconstitutionally vague, overbroad, and with no 'standards' to ascertain when, and how, he can argue and establish a cogent 'justification' defense[.]"  (Doc. No. 13, p. 70)  He further claims Iowa Code sections 723.4(2) (defining "disorderly conduct"), 321.1A (specifying conditions under which a person is presumed to be a resident of the State of Iowa), 814.5 (providing the State with the right to appeal from certain dismissals), and 814.12 (providing that the State's appeal or application for discretionary review does not stay operation of a judgment in favor of a defendant), are unconstitutional, at least as applied to him.  Peterson has named Iowa Attorney General Thomas Miller as a nominal defendant for purposes of his claim that the Iowa statutes are unconstitutional.  (Doc. No. 13, pp. 69-71)  This is a permissible method of notifying the State that a constitutional challenge to state statutes has been asserted, and affording the State an opportunity to respond to the constitutional challenge.  Fed. R. Civ. P. 5.1(a)(1)(B) (no separate notice of constitutional challenge is required where a state officer or employee, in his/her official capacity, is named as a party in the case).  Peterson's claims against Miller, in his official capacity, may proceed.

### 22.  "Injunctive Remedies (Employment & Evidence Discovery)"

Peterson seeks "injunctive relief" to allow him immediate access to the evidence he seeks in connection with his state cases; expedited consideration of his challenges to the constitutionality of certain Iowa statutes; and some unspecified "injunctive relief, regarding the discrimination in employment issues, since as time goes on, he is unemployed, without

any income, or assets, or living capital, and he has four kids to support, people!" (Doc. No. 13, p. 72) Peterson has failed to comply with the requirements of Federal Rule of Civil Procedure 65, or Local Rules 65 and 7(j) with respect to his request for injunctive relief, and this claim is dismissed on procedural grounds.

## Conclusion

For the benefit of the parties and the court, the court has summarized in the table attached to this Order the claims and parties against whom this action may proceed. The Clerk of Court is directed to prepare Summonses for these parties. The United States Marshal is directed to serve the Amended Complaint **and a copy of this Initial Review Order** on the defendants without prepayment of fees and costs, and to mail a copy of the Amended Complaint and this Order to the Storm Lake City Attorney. The defendants must move or plead in response to the Amended Complaint **by May 27, 2008**, or within twenty days after service pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), whichever is later. The City Attorney is directed to notify the court immediately if he lacks the consent or authority to appear on behalf of any of the named defendants other than the Iowa Attorney General.[2]

**IT IS SO ORDERED.**

**DATED** this 25th day of March, 2008.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]The district court may consider this Initial Review Order as a report and recommendation, to the extent applicable. *See* LR 72(g).

25

*Peterson v. Prosser*, No. C08-4005-MWB
PARTIES AND CLAIMS

(Parties' names are alphabetized, for convenience of reference)

| Party | False Arrest | Criminal Assault | Falsifying Public Documents (Police Reports, Press Reports) | Criminal Conspiracy to Falsify Public Records | Evidence Tampering, Concealing, Destruction | Conspiracy to Induce False Testimony | Intentional Infliction of Emotional Distress | Defamation of Character | Violations of Civil Rights* | Criminal Conspiracy to Violate Const'l Rights | Perjury; False Affidavits | Malicious Prosecution | False Imprisonment | Obstruction of Justice | Constitutional challenges to statutes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COLE, CHRIS | X | X | X | X | X |  | X | X | X | X | X |  |  |  |  |
| EICKHOLT, RAY | X | X | X | X | X | X | X | X | X | X | X |  |  |  |  |
| ERSKINE, TODD | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |
| MILLER, THOMAS |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |
| MOORE, PATTI |  |  | X | X |  |  | X |  | X |  |  |  |  |  |  |
| PROSSER, MARK | X | X | X | X | X |  | X | X | X | X | X |  |  |  |  |
| SPEERS, JOEY | X | X | X | X | X | X | X | X | X |  | X |  |  |  |  |

\* "Violations of Civil Rights" includes, *inter alia*, Peterson's claim that the defendants retaliated against him for exercising his right of free speech.

**NOTICE OF LAWSUIT and REQUEST FOR**
**WAIVER OF SERVICE OF SUMMONS**

<u>TO THE NAMED DEFENDANT(S) IN THE FOLLOWING CAPTIONED ACTION:</u>
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

PAUL GEORGE PETERSON,

        Plaintiff,

vs.

MARK PROSSER, TODD ERSKINE,
RAY EICKHOLT, JOEY SPEERS,
CHRIS COLE, PATTI MOORE, and
TOM MILLER,

        Defendants.

No. C-08-4005-MWB

_____

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint and a copy of the corresponding order from this court are attached. This complaint has been filed in the United States District Court for the Northern District of Iowa.

Pursuant to Rule 4 of the Federal Rules Of Civil Procedure, you have an obligation to cooperate in saving unnecessary costs of service of summons and complaint. Please sign the enclosed document acknowledging receipt of the complaint and notice of this pending lawsuit and waiving formal service of summons. After signing the enclosed document, please return it to the United States Marshal in the envelope provided within thirty (30) days of this date: _____.

I affirm that this notice and request for waiver of service of summons is being sent to you on behalf of the plaintiff, this _____ day of March, 2008.

_____
Signature (USMS Official)
Northern District of Iowa

**ACKNOWLEDGMENT OF RECEIPT OF**
**NOTICE OF LAWSUIT and**
**WAIVER OF SERVICE OF SUMMONS**
(**Return **this** document within thirty days after
_____ to the United States Marshal in envelope provided.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

PAUL GEORGE PETERSON,

               Plaintiff,                         No. C08-4005-MWB

vs.

MARK PROSSER, TODD ERSKINE,
RAY EICKHOLT, JOEY SPEERS,
CHRIS COLE, PATTI MOORE, and
TOM MILLER,

               Defendants.

_____

       I acknowledge receipt of the complaint and notice of the lawsuit in which I (or the entity on whose behalf I am addressed) have been named as a defendant. I have received and/or read the complaint accompanying this document.

       I agree to save the cost of service of a summons and an additional copy of the complaint by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4. I hereby waive service of summons.

       I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the service of summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (the date Notice, Waiver and corresponding documents were sent).

_____
Date

_____
Signature
Printed name:_____
As _____ of _____
         (Title)            (Entity)