**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

PAUL GEORGE PETERSON,

    Plaintiff,

vs.

MARK PROSSER, CHIEF OF POLICE OF STORM LAKE, IOWA, INDIVIDUALLY AND ON BEHALF OF THE CITY OF STORM LAKE, IOWA, AN IOWA MUNICIPAL CORPORATION; *et al.*,

    Defendants.

No. C08-4005-MWB

**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING INITIAL REVIEW OF CASE**

_____

**TABLE OF CONTENTS**

*I.* ***INTRODUCTION AND BACKGROUND*** . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* ***LEGAL ANALYSIS*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *1.   Standard for review of report and recommendation* . . . . . . . . 4
    *B. Objections To Report And Recommendation* . . . . . . . . . . . . . . . . . . 8
        *1.   Employment discrimination claims* . . . . . . . . . . . . . . . . . . 8
        *2.   Judicial and prosecutorial official claims* . . . . . . . . . . . . . . 10
            *a.   Judicial immunity* . . . . . . . . . . . . . . . . . . . . . . 11
            *b.   Prosecutorial immunity* . . . . . . . . . . . . . . . . . . . 12
        *3.   Defendants Murphy, Muller, Kirkhold and Armstrong* . . . . 13
        *4.   Other objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*III.* ***CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION AND BACKGROUND

Plaintiff Paul George Peterson filed his 72 page *pro se* Amended Complaint in this case on March 17, 2008. In his Amended Complaint, plaintiff Peterson melds a wide assortment of claims against twenty-one named defendants. Plaintiff Peterson's Amended Complaint was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b), for an initial review. Judge Zoss then filed a thorough and comprehensive Initial Review Order, which the court considers to be a Report and Recommendation, in which he recommends permitting 61 claims against seven defendants to proceed. Judge Zoss recommended dismissing all of plaintiff Peterson's claims against the other fifteen named defendants as well as dismissing all of plaintiff Peterson's *Bivens* claims, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because none of the named defendants were federal officials, a prerequisite for such an action. In addition, Judge Zoss recommended dismissing all of plaintiff Peterson's claims of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962-1968, because plaintiff Peterson has not made any allegation that the defendants' actions resulted in injury to his business or property, a requirement for a viable RICO claim. Judge Zoss further recommended dismissing all of the claims brought against prosecutor defendants Paul Havens, Phil Havens, Lori Kolpin, Dave Patton and James McHugh on the ground that they each had absolute immunity for their actions. Similarly, Judge Zoss recommended dismissing plaintiff Peterson's claims against defendants Iowa District Court Judge John Duffy, Iowa Magistrate Pat Eich, and the Iowa Supreme Court on the ground that each of these defendants enjoyed absolute immunity for their official actions. Judge Zoss also recommended dismissing plaintiff Peterson's employment discrimination claims against defendants Storm Lake Public Library and Buena Vista Corporation for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, on the ground that plaintiff Peterson has failed to make allegations against either defendant which would constitute a prima facie case of employment discrimination under any of these civil rights statutes. In addition, Judge Zoss recommended dismissing plaintiff Peterson's claims against two doctors, defendants Phillip Muller and Charles Murphy, on the ground that plaintiff Peterson has failed to state any viable federal claims for relief against either doctor and that the court should decline to exercise jurisdiction over any of the claimed pendent state law claims plaintiff Peterson has asserted against these doctors. Judge Zoss made the same recommendation with respect to plaintiff Peterson's claims against defendant Mark Kirkhold, the director of security for Buena Vista University, and Gary Armstrong, an attorney representing Buena Vista University, namely that the court should dismiss plaintiff Peterson's claims against these two defendants because he has failed to state any viable federal claims for relief against either defendant and that the court should decline to exercise jurisdiction over any of the claimed pendent state law claims asserted against these defendants.

On April 8, 2008, plaintiff Peterson has filed objections to Judge Zoss's Report and Recommendation. On April 21, 2008, plaintiff Peterson filed a supplemental brief in support of his objections to Judge Zoss's Report and Recommendation.
The court, therefore, must now undertake the necessary review of Judge Zoss's recommended disposition of plaintiff Peterson's claims.

## II.  LEGAL ANALYSIS

### A.  *Standard Of Review*

#### 1.  *Standard for review of report and recommendation*

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any
4

more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review"

5

if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant

7

### B. *Objections To Report And Recommendation*

#### 1. *Employment discrimination claims*

Plaintiff Peterson objects to Judge Zoss's recommendation that the court should dismiss all of his employment discrimination claims in this case. With respect to each of his claims of employment discrimination, Judge Zoss concluded, *inter alia*, that plaintiff Peterson failed to allege he was qualified for any position for which the defendants were

---

originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

accepting applications, he was denied such a position, and the defendants instead hired someone from outside the protected class. As a result, Judge Zoss concluded that plaintiff Peterson has failed to include allegations constituting a prima facie case of "failure to hire" employment discrimination.

In order to make out a prima facie case of employment discrimination under the ADA, plaintiff Peterson must establish: (1) that he is disabled within its meaning; (2) that he is qualified to perform the essential functions of the job with or without reasonable accommodation; and, (3) that he suffered an adverse employment action in circumstances that give rise to an inference of unlawful discrimination based on disability. *Rask v. Frensenius Med. Care N. Am.*, 509 F.3d 466, 469 (8th Cir. 2007); *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 730 (8th Cir. 2007); *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1035 (8th Cir. 2007); *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044-45 (8th Cir. 2005); *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 706-07 (8th Cir. 2002). Similarly, to satisfy the prima facie burden in a failure-to-hire age discrimination case under the ADEA, plaintiff Peterson must show: "'(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position.'" *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (quoting *Chambers v. Metropolitian Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003)). Likewise, in order to make out a prima facie case in a failure-to-hire religious discrimination case under Title VII, plaintiff Peterson must establish that: (1) he is a member of a protected class; (2) that he applied for and was qualified for a position that the employer was seeking to fill; (3) that he was rejected for employment; and (4) that the circumstances surrounding the employment decision give rise to an inference of unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989); *McDonnell Douglas*

9

*Corp. v. Green*, 411 U.S. 792, 802 (1973); *E.E.OC. v. Wiltel, Inc.*, 81 F.3d 1508, 1515 (10th Cir. 1996); *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir. 1994); *see also Thompson v. St. John's Unified Sch. Dist.*, 26 Fed. Appx. 712, 715 (9th Cir. 2002). Thus, central to any claim of failure-to-hire discrimination under the ADA, ADEA, or Title VII is the requirement that plaintiff Peterson allege that he was qualified for the position he sought. Plaintiff Peterson makes no such claim in his Amended Complaint. This is best exemplified by the fact that plaintiff Peterson alleges that he suggested that he be given the position of "Internal Affairs Investigator" with the Storm Lake Police Department but makes no assertion that he has either the training or experience in law enforcement which would qualify him for such a position.[2] Amended Compl. at 22. Likewise, with respect to the library clerk position at the Storm Lake Public Library, plaintiff Peterson makes no assertion in his Amended Complaint that he has any training or experience in library science which would qualify him for such a position. Finally, concerning a position with the University of Buena Vista, defendant Peterson does not disclose either the position at the University of Buena Vista for which he applied for employment nor his qualifications for employment in a university setting. Therefore, the court overrules plaintiff Peterson's objections to this portion of Judge Zoss's Report and Recommendation.

### 2. *Judicial and prosecutorial official claims*

The court next takes up plaintiff Peterson's objections to Judge Zoss's recommendation that the court should dismiss all of his claims made in this case against state judges, prosecutors and the Iowa Supreme Court. With respect to each of these claims, Judge Zoss concluded, *inter alia*, that each of these defendants enjoyed absolute immunity for their actions.

---

[2]The court notes that plaintiff Peterson alleges in his Complaint that he is "a suspended Illinois lawyer." Complaint at 2.

### a. *Judicial immunity*

As early as 1872, the United States Supreme Court recognized that judicial immunity was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872). As a result, the Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.*, 13 Wall. at 351. In *Pierson v. Ray*, 386 U.S. 547 (1967), the United States Supreme Court held that the common-law absolute immunity of judges for "acts committed within their judicial jurisdiction" was preserved under § 1983. *Id.* at 545-55 (quoting *Bradley*, 13 Wall. 335, 20 L. Ed. 646). Moreover, the Eighth Circuit Court of Appeals has held that pleading a conspiracy does not affect absolute immunity. *Moses v. Parwatikar*, 813 F.2d 891, 893 (8th Cir. 1987). The Supreme Court has made clear that the judicial immunity is overcome in only the following two sets of circumstances:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227-229, 108 S. Ct., at 544-545; *Stump v. Sparkman*, 435 U.S., at 360, 98 S. Ct., at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357, 98 S.Ct., at 1104-1105; *Bradley v. Fisher*, 13 Wall., at 351.

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

The court concludes that plaintiff Peterson alleges acts in his Amended Complaint which were performed by defendants John Duffy, Pat Eich, and the Iowa Supreme Court pursuant to their official judicial duties. Judge Zoss, therefore, was correct in recommending that plaintiff Peterson's claims against defendants Duffy, Eich, and the

11

Iowa Supreme Court be dismissed. Accordingly, the court overrules plaintiff Peterson's objections to this portion of Judge Zoss's Report and Recommendation.

### b. *Prosecutorial immunity*

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the United States Supreme Court, drawing on the absolute immunity from civil suit afforded to judges in the performance of their judicial duties, established that prosecuting attorneys' activities which are "intimately associated with the judicial phase of the criminal process [are] functions to which the reasons for absolute immunity apply with full force." *Id*. at 430. Thus, the Court in *Imbler* extended absolute immunity from civil damages in actions under 42 U.S.C. § 1983 to a state prosecutor whose performance of these activities was challenged. *Id*. at 424-32. Both the United States Supreme Court and the Eighth Circuit Court of Appeals have recognized absolute immunity for prosecutors' "conduct in initiating a prosecution and in presenting the State's case." *See Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir. 1993) (citing *Burns v. Reed*, 500 U.S. 478 (1991)).

In order to make a determination on an absolute immunity claim, the court must utilize a "functional approach," examining "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). The actions allegedly taken by prosecutor defendants Paul Havens, Phil Havens, Lori Kolpin, Dave Patton and James McHugh were all taken in initiating and pursuing civil commitment proceedings against plaintiff Peterson. Federal circuit courts of appeals have recognized that absolute immunity for prosecutors extends to protect them while performing those same functions on behalf of the state in civil commitment proceedings similar to the one at issue here in this case. *See, e.g., Smith v. Shorstein*, 217 Fed. Appx. 877, 880 (11th Cir. 2007) (holding that prosecutors who initiated civil commitment proceedings were entitled to absolute prosecutorial immunity in subsequent civil rights action, absent evidence that they had acted outside of their territorial jurisdiction); *Scott*

12

*v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) (holding that state prosecutor enjoyed absolute immunity for acts and omissions relating to preparation and submission of petition for involuntary commitment); *Byrne v. Kysar*, 347 F.2d 734, 736 (7th Cir.1965) (holding that state prosecutor enjoyed absolute immune where he acted in official capacity as prosecutor when he signed petition initiating judicial inquiry into plaintiff's mental condition). Therefore, the court concludes that prosecutor defendants Paul Havens, Phil Havens, Lori Kolpin, Dave Patton and James McHugh have absolute immune against plaintiff Peterson's § 1983 claims arising from their respective roles in civil commitment proceedings undertaken against plaintiff Peterson because the allegedly improper actions were "intimately associated" with the civil commitment proceedings. Therefore, the court concludes that Judge Zoss was correct in recommending that plaintiff Peterson's claims against defendants Paul Havens, Phil Havens, Lori Kolpin, Dave Patton and James McHugh be dismissed. Accordingly, the court overrules plaintiff Peterson's objections to this portion of Judge Zoss's Report and Recommendation.

### 3. *Defendants Murphy, Muller, Kirkhold and Armstrong*

Plaintiff Peterson also objects to Judge Zoss's recommendation that the court should dismiss plaintiff Peterson's claims against defendants Phillip Muller, Charles Murphy, Mark Kirkhold and Gary Armstrong because plaintiff Peterson has failed to state any federal claim for relief against these defendants that is plausible on its face, and that the court should decline to exercise jurisdiction over plaintiff Peterson's state law claims against these defendants. The court concurs with Judge Zoss's analysis of plaintiff Peterson's claims against these defendants and overrules plaintiff Peterson's objections to this portion of Judge Zoss's Report and Recommendation.

### 4. *Other objections*

Plaintiff Peterson also objects to portions of the chart attached to Judge Zoss's Report and Recommendation which he asserts incorrectly state the recommended

disposition of some of his claims. Specifically, plaintiff Peterson points out that while Judge Zoss recommended dismissing plaintiff Peterson's claims against defendant Chris Cole for criminal assault, falsifying public documents, criminal conspiracy and evidence tampering in the body of the Report and Recommendation, these claims were included as viable claims in the chart. Similarly, plaintiff Peterson points out that while Judge Zoss recommended not dismissing plaintiff Peterson's claim against defendant Joey Speers for perjury in the body of the Report and Recommendation, this claim was omitted from the chart as a viable claim. Both of these objections are sustained.

With respect to all other objections made by plaintiff Peterson, the court has conducted a review of the record before it and considered plaintiff Peterson's objections to Judge Zoss's Report and Recommendation, and concludes that all of these objections are overruled.

## III.  CONCLUSION

For the reasons discussed above, the court **accepts** Judge Zoss's Report and Recommendation. Therefore, plaintiff Peterson's claims against defendants Storm Lake Public Library, Buena Vista University, John Duffy, Pat Eich, the Iowa Supreme Court, Paul Havens, Phil Havens, Lori Kolpin, Dave Patton, James McHugh, Phillip Muller, Charles Murphy, Mark Kirkhold, and Gary Armstrong are dismissed in their entirety. With respect to the remaining defendants, the court concludes that only those claims identified in the chart attached to Judge Zoss's Report and Recommendation, as modified, which the court has included below in its modified form, remain viable in this case. All other claims made by defendant Peterson are dismissed.

**IT IS SO ORDERED.**

**DATED** this 23rd day of April, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

A copy of this document has been mailed/faxed to all counsel of record, pro se parties and others listed and not shown as having been served electronically under the cm/ecf system:

by: /s/ des, Deputy Clerk 4/23/08

*Peterson v. Prosser*, No. C08-4005-MWB
**PARTIES AND CLAIMS**
(Parties' names are alphabetized, for convenience of reference)

| Party | False Arrest | Criminal Assault | Falsifying Public Documents (Police Reports, Press Reports) | Criminal Conspiracy to Falsify Public Records | Evidence Tampering, Concealing, Destruction | Conspiracy to Induce False Testimony | Intentional Infliction of Emotional Distress | Defamation of Character | Violations of Civil Rights* | Criminal Conspiracy to Violate Const'l Rights | Perjury; False Affidavits | Malicious Prosecution | False Imprisonment | Obstruction of Justice | Constitutional challenges to statutes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COLE, CHRIS | X | | | | | | X | X | X | X | X | X | | | |
| EICKHOLT, RAY | X | X | X | X | X | X | X | X | X | X | X | X | | | |
| ERSKINE, TODD | X | X | X | X | X | X | X | X | X | X | X | X | X | X | |
| MILLER, THOMAS | | | | | | | | | | | | | | | X |
| MOORE, PATTI | | | X | X | | X | | X | | | | | | | |
| PROSSER, MARK | X | X | X | X | X | | X | X | X | X | X | X | | | |
| SPEERS, JOEY | X | X | X | X | X | X | X | X | X | X | X | X | | | |

* "Violations of Civil Rights" includes, *inter alia*, Peterson's claim that the defendants retaliated against him for exercising his right of free speech.

16