IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PAUL GEORGE PETERSON, <br><br>        Plaintiff, <br><br> v. <br><br> MARK PROSSER, CHIEF OF POLICE OF STORM LAKE, IOWA, INDIVIDUALLY AND ON BEHALF OF THE CITY OF STORM LAKE, IOWA, AN IOWA MUNICIPAL CORPORATION, et al., <br><br>        Defendants. | **No. 08-CV-4005-DEO** <br><br><br><br> **ORDER** |

———————————————

Before the Court is the "Report and Recommendation on Motion for Summary Judgment" issued by Chief United States Magistrate Judge Paul A. Zoss.  Docket No. 120.  In his Report, Judge Zoss recommends that Defendants' Motion for Summary Judgment (Docket No. 93) be granted in part and denied in part.  Peterson filed objections, and this Court presided over a Hearing concerning this and all other pending matters on August 18, 2011.[1]  Docket No. 148.  Upon a de novo review

———————————————

[1] Although this Order primarily addresses Defendants' summary judgment motion and the Magistrate's Report, the other pending motions in this action will also be addressed.  These include Defendants' Motion in Limine (Docket No. 127) and Counsel for Plaintiff's Motion to Withdraw (Docket No. 146), as well as a pro se motion by Peterson challenging a previous order by Judge Zoss (Docket No. 112).

of the record,[2] the Court is persuaded that the findings,
conclusions, and resulting recommendation set forth in Judge
Zoss' Report are correct.

Judge Zoss' Report is detailed and thorough, so very
little will be added.  As the Report provides,

> The events giving rise to this lawsuit
> began on the night of January 21, 2006,
> during what appears to have been a routine
> traffic stop.  Two Storm Lake, Iowa, police
> officers, defendants Eickholt and Speers,
> were in the process of administering field
> sobriety tests to a motorist along the side
> of the road when Peterson drove by in his
> pickup truck.  Peterson was concerned
> because it was cold outside and the
> motorist, 24-year-old Ricardo Perez, was
> not wearing a coat.  Peterson stopped his
> truck and approached a police squad car
> parked at the scene.

Peterson alleges that he walked toward

---

[2] The Court reviews Judge Zoss' Report pursuant to the
statutory standard found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo
> determination of those portions of the
> report or specified proposed findings or
> recommendations to which objection is made.
> A judge of the court may accept, reject, or
> modify, in whole or in part, the findings
> or recommendations made by the magistrate
> judge.  The judge may also receive further
> evidence or recommit the matter to the
> magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); see Fed. R. Civ. P. 72(b)
(providing identical standard).

the squad car because he saw someone sitting inside, but when he got close to the car, he realized the car's occupant was not a police officer, so he returned to his truck.  Doc. No. 13, Amended Complaint, ¶ 1.  As he arrived back at his truck, one of the policemen, defendant Eickholt, ran across the street toward him.  Peterson told Eickholt, "I think it is inhumane you won't let that boy put on a coat." Eickholt responded, "Get back in your truck," but within a second or two of this directive, and before Peterson had a chance to comply, Eickholt "grabbed [Peterson], without justification, and dragged him across the street, slammed his body onto the squad car, handcuffed him and then paraded him back in front of the video camera." Id., ¶ 2.

According to the defendants, when Speers and Eickholt saw Peterson approach the squad car, they were concerned for several reasons: it was nighttime, the occupant of the car was a high school student on a "job shadowing" exercise, and they did not know who Peterson was or why he was walking up to the squad car.  Doc No. 93-2, Defendants' Statement of Material Facts ("Def. Facts"), ¶¶ 5-7.  They also were concerned because Peterson's vehicle was parked in the traveled portion of the street with its lights off.  Id., ¶ 15. Speers approached Peterson and asked him to leave the scene.  Peterson did not comply, so Speers again asked Peterson to leave, and again Peterson did not comply.  In his incident report, Speers states that he told Peterson to leave "3-4 times."  Doc. No. 93-4, Defendants' Appendix ("Def. App."), Ex. 2, p. 4; see also, id., Ex. 5, p. 30. In Eickholt's incident report, he states that Speers told Peterson to leave "at least two times."  Id., Ex. 3, p. 8; see also, id., Ex. 5, p. 70.  Peterson did not

leave, but continued to complain about the way in which the officers were handling the traffic stop.   As Peterson's protests became louder and he became more upset, Eickholt approached Peterson and told him to return to his vehicle.   According to Eickholt, Peterson responded, "I refuse to leave while you violate this man's constitutional rights." Def. App., Ex. 5, p. 71.   Speers and Eickholt then grabbed Peterson, placed him against the squad car, and arrested him. Def. Facts, ¶¶ 8-9; Def. App., Ex. 3, p. 8; Ex. 5, p. 14.

Speers then transported Peterson to the Buena Vista County Sheriff's office, where he was charged with "interference with official acts" and released.   Def. Facts, ¶ 3.   Eventually, after a bench trial, Peterson was found not guilty on this charge.   Doc. No. 117, Plaintiff's Appendix ("Pl. App."), Ex. 22.

Docket No. 120 at 2-4.   Unfortunately, as Judge Zoss' Report goes on to explain, Peterson's acquittal did not represent the end of Mr. Peterson's saga:

About a week after the traffic stop, Peterson delivered a five-page, single-spaced, typed letter to the Buena Vista County Sheriff.   Def. App., Ex. 6, pp. 110-114.   The letter, captioned "Close to the Shootout," was a disjointed and angry diatribe concerning several seemingly unrelated matters and against a number of different individuals and organizations. Although in the letter Peterson specifically disclaimed any intent to engage in violence, he repeatedly referenced bullets, guns, killings, and death, as well as his belief in the impending violent deaths of himself and his mother.

4

. . . .

The letter was referred to the Storm
Lake Police Department.  After reviewing
the letter, defendants Erskine and Cole
concluded that Peterson had mental health
issues, and they completed paperwork to
have Peterson committed for a mental health
evaluation.  Def. App., Exs. 7 & 8.  Based
on this paperwork, a state magistrate
issued an Order for Immediate Custody.
Def. App., Ex. 9, p. 135.

At Peterson's request, defendant
Moore, the Storm Lake City Administrator,
agreed to meet with Peterson on January 30,
2006, at the Storm Lake City Hall.  During
the meeting, Peterson told Moore he wanted
to be hired by the city as an "internal
affairs" investigator.  He knew the city
did not have such a position, but he
thought the city needed one, and he
believed the city should hire him for the
job.  He reasoned that by hiring him, the
city could mitigate some of the damages he
believed he was owed as a result of his
encounter with the police on January 21,
2006.  According to Peterson, when he met
with Moore, "an EMPLOYMENT INTERVIEW WAS
COMMENCED, and the parties discussed
salary, benefits, parameters of the job,
the equipment necessary, ie: a 'scanner,'
a 'badge,' an old squad car, and nothing
else, ie: no firearm would be necessary or
even advisable."  Amended Complaint, ¶ 66.
Moore denies that the meeting ever was an
"employment interview."

The defendants Prosser and Erskine
took advantage of the fact that Peterson
was at City Hall to take him into custody
pursuant to the Order for Immediate
Custody.  According to Peterson, Prosser
took him into another room, where Erskine
"grabbed [his] hands, and handcuffed him,
and announced that [he] was being
'committed.'"  <u>Id.</u>, ¶ 67.  According to

Peterson, Prosser told him, "We are going to get you some help." Id. Peterson was taken to the Cherokee Mental Health Institute, where he was diagnosed as suffering from bipolar disorder. Pl. App., Ex. 33. After a hearing, his commitment was extended, and eventually he was released. Pl. App., Exs. 14 & 15.

Docket No. 120 at 4-8. As Judge Zoss' Report provides, this too did not represent the end of Mr. Peterson's troubles:

On January 17, 2007, Peterson arrived at the Storm Lake City Hall and approached the front counter. He took out some papers and began to talk loudly to the person behind the counter about a number of topics, including marijuana as a treatment for cancer. He then expressed anger at having been arrested by Storm Lake police. As Peterson continued to talk, his voice became increasingly louder, and he started to lean in toward the person behind the counter. The person became "nervous and scared." Def. App., Ex. 17, p. 161. Another city employee became concerned with Peterson's aggressive tone, and approached Peterson and asked him if he "had any reason for being there." Def. App., Ex. 18, p. 167. Peterson backed up and toned down, but continued to talk. Id. Another city employee called the police. The police arrived and arrested Peterson for disorderly conduct.

Docket No. 120 at 8-9 (footnotes omitted).

This action followed, commencing with Mr. Peterson's "78-page Complaint . . . alleging a myriad of claims against a diverse array of defendants" (Docket No. 120 at 1 (footnote

omitted)), filed on January 22, 2008. The case has since taken a long and meandering path, the details of which will not be repeated here. Suffice it to say that, at present, there are fourteen claims, all of which the Court presumes to be asserted pursuant to 42 U.S.C. § 1983, remaining against six defendants. The remaining defendants are: Storm Lake Chief of Police Mark Prosser; Storm Lake Police Officers Todd Erskine, Ray Eickholt, Joey Speers, and Chris Cole; and Storm Lake City Administrator Patti Moore. The remaining claims against these defendants are for false arrest, criminal assault, falsifying public documents, criminal conspiracy to falsify public records, evidence tampering, conspiracy to induce false testimony, intentional infliction of emotional distress, defamation of character, violation of civil rights (including retaliation against Peterson for exercising his right of free speech), criminal conspiracy to violate constitutional rights, perjury, malicious prosecution, false imprisonment, and obstruction of justice. Judge Zoss' Report recommends that the claims against Defendants Eickholt and Speers for false arrest and assault arising out of the January 21, 2006, incident should be allowed to proceed to trial, and that all of the remaining claims and defendants should be

7

dismissed from the case.   Docket No. 120 at 34.

Turning to the legal reasoning underlying the foregoing recommendation, Judge Zoss' Report first discusses Peterson's claims for false arrest/false imprisonment.[3]   As provided in Judge Zoss' Report, Peterson is asserting claims of false arrest arising from three incidents: his arrest for interference with official acts on January 21, 2006; his civil mental health commitment on January 30, 2006; and his arrest at City Hall on January 17, 2007.

Regarding Peterson's false arrest claim against Officers Eickholt and Speers arising from his January 21, 2006, arrest for interference with official acts, Judge Zoss concludes that, "viewing the facts in a light most favorable to Peterson, no reasonable officer could have concluded, in good faith, that Peterson had committed the crime of 'interference with official acts'" because, under Peterson's version of the incident, no reasonable officer could find that he had resisted or obstructed anyone.   Docket No. 120 at 20.   In

---

[3] Judge Zoss correctly notes in his Report that, under Iowa law, "'[f]alse arrest is indistinguishable from false imprisonment.'"   Docket No. 120 at 25, footnote 11 (quoting Kraft v. City of Bettendorf, 359 N.W.2d 466, 469 (Iowa 1984) and citing Barrera v. Con Agra, Inc., 244 F.3d 663, 666 (8th Cir. 2001)).   For this reason, the Court agrees with Judge Zoss that Peterson's false arrest and false imprisonment claims should be considered together.

other words, Judge Zoss concluded that, under Peterson's
version of the arrest, Officers Eickholt and Speers lacked
probable cause to support the arrest.  Judge Zoss noted that,
although the officers had ample probable cause to support the
arrest *under their version of the facts*, "[t]his simply means
probable cause is a question that must be left for the fact
finder."  Docket No. 120 at 20.  The Court agrees with Judge
Zoss and finds that the question of whether Officers Eickholt
and Speers had probable cause to arrest Peterson on January
21, 2006, is a proper question for the fact finder in this
case.  Therefore, the Court will not grant Defendants' Motion
insofar as it asks the Court to find Officers Eickholt and
Speers had probable cause, as a matter of law, to arrest
Peterson on January 21, 2006.  The Court also agrees with
Judge Zoss that the officers are not entitled to qualified
immunity because, "[u]nder Peterson's version of the arrest,
the officers did not have even 'arguable probable cause' to
believe Peterson had committed the crime of interference with
official acts."  Docket No. 120 at 22.  Therefore, summary
judgment on this claim will not be granted to Defendants on
this basis.  Finally, the Court agrees with Judge Zoss that
this claim is not barred by the statute of limitations found

in Iowa Code § 670.5, and thus summary judgment on this claim should not be granted to Defendants on this basis.

As for Peterson's false arrest claim against Defendants Prosser and Erskine arising from his arrest for disorderly conduct on January 17, 2007, Judge Zoss concludes that, "even after giving Peterson the benefit of all inferences from [the facts][,] [t]here would be no basis for a fact-finder to conclude that no reasonable officer would have believed he had probable cause to arrest Peterson for disorderly conduct." Docket No. 120 at 24. Judge Zoss further concludes that Officers Prosser and Erskine are entitled to qualified immunity for this arrest because "[t]he record does not show that the arresting officers in this case should have known it would be unlawful under the circumstances of this case to arrest Peterson for disorderly conduct." Docket No. 120 at 24. The Court agrees with these conclusions and will therefore grant Defendants' Motion on this claim.

Turning to Peterson's false arrest claim against Defendants Prosser, Erskine, and Cole arising from Peterson's civil mental health commitment on January 30, 2006, Judge Zoss' Report provides:

> Other than Peterson's own unfounded
> speculations, there is no basis in the

10

record to support these claims. The
undisputed evidence in the record
establishes that the commitment order was
sought based on Peterson's "Close to the
Shootout" letter, and on nothing else.
That letter provided ample justification
for the defendants to seek the commitment
order, and for the judge to issue it. No
relationship has been established between
the issuance of the commitment order and
any other claim. Summary judgment on these
claims should be granted to the defendants.

Docket No. 120 at 25. The Court agrees with Judge Zoss'
assessment and will therefore grant Defendants summary
judgment on this claim.

Turning next to Peterson's assault claims against
Defendants Eickholt, Speers, Prosser, and Erskine, Judge Zoss
first notes that, "[w]ith respect to the arrest of January 21,
2006, the court has found that there are genuine issues of
material fact concerning whether Eickholt and Speers had
probable cause to arrest Peterson." Docket No. 120 at 26. In
other words, the question of whether the arrest was supported
by probable cause, and was therefore a "lawful" arrest, must
be submitted to the jury as fact-finder. Because a claim of
assault also turns in part on the lawfulness of the arrest at
issue, Judge Zoss concludes that Peterson's assault claims
against Officers Eickholt and Speers also must be submitted to
the jury. Conversely, Judge Zoss concludes "Peterson has

11

raised no issues of material fact with respect to his other assault claims." Docket No. 120 at 26.  The Court agrees with the foregoing assessment.  Accordingly, the Defendants' Motion for Summary Judgment will be denied with respect to Peterson's assault claims against Eickholt and Speers arising out of the January 21, 2006, incident, but will be granted as to Peterson's other assault claims.

Regarding Peterson's claim of falsifying public documents asserted against Defendants Eickholt, Erskine, Prosser, and Speers, Judge Zoss notes that, in attempting to support this claim,

> Peterson has taken police reports, press releases, and other documents relating to his various encounters with the police and other public officials during 2006 and 2007, and nit-picked the documents in an effort to show they were false.

Docket No. 26.  Yet, despite these efforts, Judge Zoss concludes "there is insufficient evidence from which a reasonable fact-finder could find or infer that any of these documents was intentionally or recklessly falsified for any of the purposes alleged by the plaintiff," adding, "[t]here has been no showing that the documents contained any 'deliberate falsehoods' or that the officers acted with a 'reckless disregard for the truth' when they prepared the documents."

Docket No. 120 at 27 (quoting Murray v. Lene, 595 F.3d 868, 871-73 (8th Cir. 2010)). Moreover, Judge Zoss concludes, "the defendants have qualified immunity for this claim because Peterson has not established the intentional or reckless inclusion of false information in the documents." Docket No. 120 at 27 (citing Morris v. Lanpher, 563 F.3d 399, 403 (8th Cir. 2009)). The Court agrees with Judge Zoss' assessment and will therefore grant Defendants summary judgment on this claim.

Judge Zoss similarly concludes Peterson's claim of criminal conspiracy to falsify public records against Defendants Eickholt, Erskine, Moore, Prosser, and Speers lacks merit as "[t]here is no evidence of the grand conspiracy alleged by the plaintiff." Docket No. 120 at 27. The Court again agrees with Judge Zoss' assessment and will therefore grant Defendants summary judgment on this claim.

Judge Zoss also concludes that there is no support in the record either for Peterson's claim of evidence tampering against defendants Eickholt, Erskine, Moore, Prosser, and Speers, or for Peterson's claim that Defendants Eickholt, Erskine, and Speers conspired to induce false testimony at Peterson's trial on the interference with official acts

13

charge.  Docket No. 120 at 27-29.  The Court agrees and will grant Defendants summary judgment on these claims.

Regarding Peterson's claim of intentional infliction of emotional distress against Defendants Cole, Eickholt, Erskine, Moore, Prosser, and Speers, Judge Zoss concludes that none of the elements of this cause of action find any support in the record.  Docket No. 120 at 28.  Judge Zoss similarly concludes that the record contains no support for Peterson's claim of defamation of character against Defendants Cole, Eickholt, Erskine, Prosser, and Speers.  Docket No. 120 at 29-30.  The Court agrees with Judge Zoss' assessment as to both claims and will therefore grant Defendants summary judgment on these claims.

Judge Zoss next addressed Peterson's assertion that Defendants Cole, Eickholt, Erskine, Moore, Prosser, and Speers violated his civil rights by arresting him on January 21, 2006, in retaliation for his exercise of his right of free speech when he complained about the officers' treatment of the motorist during the January 21, 2006, incident.  Judge Zoss concludes "[t]he defendants are entitled to qualified immunity on this claim because there is no proof of retaliatory animus, and Peterson has not shown that his protected comments

14

immediately before his arrest were a substantial factor in [the] officers' decision to arrest him." Docket No. 120 at 31. Judge Zoss also concludes that Peterson's claim that the Defendants violated his civil rights by having him committed on January 30, 2006, finds no support in the record. Id. The Court agrees and will grant Defendants summary judgment on these claims.

As for Peterson's claims concerning an alleged criminal conspiracy to violate his civil rights, Judge Zoss notes "[a] claim of a conspiracy to violate constitutional rights under section 1983 requires proof of specific facts tending to show a meeting of the minds among the alleged conspirators." Docket No. 120 at 32 (citation omitted). Because the Court agrees with Judge Zoss that such a claim has no support in this record, this claim will also be dismissed.

Judge Zoss next concludes that Peterson's perjury claims against Defendants Cole, Eickholt, Erskine, Prosser, and Speers should be dismissed because they lack support in the record, and in any event the Defendants enjoy absolute immunity from this type of claim. Docket No. 120 at 32-33 (citations omitted). The Court agrees and will grant Defendants summary judgment on this claim.

15

Judge Zoss next addresses Peterson's claim of malicious prosecution against Defendants Cole, Eickholt, Erskine, Prosser, and Speers in connection with both the January 21, 2006, incident and Peterson's civil commitment on January 30, 2006.  Regarding the January 21, 2006, arrest, Judge Zoss concludes that Peterson has offered no evidence concerning malice on the part of the Defendants or damages, two essential elements to this claim.  Docket No. 120 at 33.  As for the malicious prosecution claim arising from Peterson's civil commitment, Judge Zoss similarly concludes Peterson has failed to make several essential showings on this claim.  Id.  The Court agrees and will grant Defendants summary judgment on these claims.

Turning finally to Peterson's obstruction of justice claim against Defendant Erskine, Judge Zoss concludes "[t]his claim has no support in the record, and is contradicted by sworn evidence."  Docket No. 120 at 34.  The Court agrees and will grant Defendants summary judgment on this claim.

In sum, following a de novo review of the record, the Court is persuaded that the findings, conclusions, and resulting recommendation set forth in Judge Zoss' Report and summarized above are correct.  Before concluding this Order,

16

however, the Court finds it necessary to clarify the scope of this Order.  During the most recent hearings in this matter, Mr. Peterson has referred to other actual or contemplated actions or proceedings; for example, his claims as to Buena Vista University and other claims, which, from Peterson's perspective, bear some relationship to this case.  This Court is persuaded that these claims are separate and distinct from the false arrest and assault matters discussed herein.  This Order is not intended to affect Mr. Peterson's right to maintain those actions or proceedings, or to seek reinstatement of claims previously dismissed in this action.[4]

**IT IS THEREFORE HEREBY ORDERED** that this Court **accepts** Chief Magistrate Judge Zoss' Report and Recommendation (Docket No. 120).  Defendants' Motion for Summary Judgment (Docket No.

---

[4] Mr. Peterson has sought reinstatement of certain claims that were dismissed in prior orders.  <u>See, e.g.</u>, Docket No. 138 (handwritten motion requesting, among other things, that the Court reconsider a prior order which accepted Judge Zoss' earlier recommendation that certain claims be dismissed for failure to state a viable federal claim); <u>see also</u> Docket Nos. 14 (Report and Recommendation/Initial Review Order recommending dismissal of certain claims) and 18 (District Court Order accepting the recommendation and dismissing several claims).  The Court will consider further requests to reinstate such claims if, but only if, such requests are filed in the form of a motion containing citation to legal authority (including pincites) by appointed counsel for Mr. Peterson.

17

93) is therefore hereby **GRANTED in part** and **DENIED in part**, consistent with Judge Zoss' Report and this Order.  The claims against Defendants Eickholt and Speers for false arrest and assault arising out of the January 21, 2006, incident **shall** proceed to trial.  All of the remaining claims discussed herein and defendants are hereby **dismissed** from the case.  Mr. Peterson's Appeal of Magistrate's Decision (Docket No. 112) and Motion to Withdraw (Docket No. 146) are **DENIED**. Defendants' Motion in Limine (Docket No. 127) is **DENIED** without prejudice to refiling at trial.

**IT IS SO ORDERED** this 30th day of September, 2011.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

18